UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                                    ORDER
                                                                     20-MJ-565-MJP

vs.

DAVID DIXON,

                       Defendant.

_____

**Pedersen, M.J.** This matter is before the Court on the government's motion, made orally on the record on April 10, 2020, to detain the defendant, David Dixon ("Defendant"), pending the resolution of the charges filed against him. Defendant consented to hold the hearing on April 28, 2020, at which time the parties proffered information to the Court. Defendant appeared by video link from the Monroe County Jail, his appointed counsel, Sonya Zoghlin, Esq., and Cassie Kocher, AUSA, representing the government, appeared in person. Both sides proceeded by proffer. After reviewing the facts, and applying the law, I find that a combination of conditions can reasonably assure the appearance of Defendant and the safety of the community. Therefore, I order Defendant released on conditions, as further outlined below.

## FINDINGS OF FACT

Based on the proffers, as well as the information contained in the affidavit supporting the complaint and the Pretrial Services report, I make the following findings of fact:

1. A criminal complaint was brought before me on April 3, 2020, alleging that Defendant had knowingly possessed a controlled substance with the intent to distribute it, in violation of Title 21, United States Code, Section 841(a)(l) (Possession with Intent to Distribute a Controlled Substance); and knowing that he had previously been convicted on or about January 4, 2004, in Monroe County Court, Monroe County, New York, of a crime punishable by imprisonment for a term exceeding one year; unlawfully did knowingly possess, in and affecting commerce, a firearm, namely, a Bersa Firearms, .380 caliber, model Thunder, semi-automatic handgun, in violation of Title 18, United States Code, Section 922(g) (Possession of a Firearm by a Convicted Felon) and did knowingly possess a firearm in furtherance of a drug trafficking offense in violation of Title 18, United States Code, Section 924(c).

2. On March 11, 2020, at approximately 2:37 a.m., Rochester Police Officers responded to the area of 159 Gillette Street, Rochester, NY, for a report of a male dressed in dark clothing, attempting to unlawfully enter the rear door of the residence.

3. As officers approached the area, they observed a male walking northbound on Gillette Street that matched the suspect's description. Rochester Police Officers indicated that they did not observe any additional individuals in the area at this time.

4. The victim who had called 911 was interviewed by a police officer and the interview was captured on a body camera.

5. The victim told the officer that there had been no burglary or attempted burglary.

6. The victim told the officer that two men were parked on her street in a Jeep and were playing loud music.

7. The victim told the officer that one man got out of the Jeep and he was wearing shorts. That man walked into the victim's driveway and that is when she called 911.

8. Rochester Police Officer Scott Mielke approached the male who was not wearing shorts and observed that he was carrying an open bottle of

      Hennessey liquor. Officers requested the male's identification and determined his name was David Dixon, the defendant.

9. As Defendant proceeded to pour the contents of the liquor bottle onto the sidewalk, he stated to officers that he was on his way home from the gas station. As additional officers arrived at the scene, Defendant fled on foot and was apprehended by officers after a short pursuit.

10. While officers took Defendant into custody, they asked him if he had any weapons on his person. Defendant responded that he had a gun on his left hip.

*Background*

11. Defendant, age 38, was born in Rochester, New York to Davie Mack (deceased) and Bernadine Dixon (age 61).

12. He has one sister, Myleka Dixon (age 39).

13. His mother and sister both live at 453 Electric Avenue, in Rochester, New York.

14. He reported a good relationship with his family.

15. Defendant is a lifelong resident of Rochester, New York. He has lived at 250 Terrace Park in Rochester, New York, for the past 8 months with his significant other, Tamika Ponder, and her two children (ages 13 and 8). Prior to that, he lived with his sister at 453 Electric Avenue in Rochester, New York for 8 years.

16. If released, he plans to return to 250 Terrace Park.

17. Ms. Ponder works full time at Mitel in Rochester, New York.

18. Defendant was married to Cassandra (née White) Dixon from 2002 until 2010. Together they have a daughter, Dageonnie Dixon (age 19).

19. Defendant also has a daughter (age 5) who lives with her mother in Atlanta, Georgia.

20. He reported a good relationship with his children.

21. For the past seven months, Defendant has been living with his girlfriend of one year, Tamika Ponder, at 250 Terrace Park, in Rochester, New York.

22. Ms. Ponder indicated they have lived there since August 2019 and Defendant is welcome to return if released.

23. Defendant attended John Marshall High School through the tenth grade, last attending around 1998.

24. He obtained his GED in 2010.

25. In 2011, he attended Monroe Community College, studying Business Administration.
26. Defendant reported he has worked seasonal construction for three to four years. He works under-the-table from June until October.
27. He performs odd jobs in the off-season and earns $50-100 weekly.
28. He plans to return to work if released.
29. In the past, he has worked at KFC, Lidestri, Century Mold, and Red Osier.
30. On November 17, 2000, Defendant pled guilty to Assault 3rd: Intent to Cause Physical Injury (misd), and Criminal Trespass 2nd (misd), adjudicated a youthful offender and sentenced to 3 years' probation.
31. His probation was revoked, and he was resentenced to 6 months in jail.
32. On January 5, 2004, he pled guilty to Robbery 1st: Displays What Appears to be a Firearm (felony). Sentenced to 8 years' jail, restitution and an order of protection.
33. The police report on the Robbery, Gov't Ex. 2, indicates that the robbery took place on the street and porch of a house in the city, and the victim was robbed at gunpoint by two individuals, both of whom had handguns, and that a shot was fired up into the porch pillar of 116 Lux Street, Rochester, NY.
34. In 2010, he was paroled, but parole was revoked in 2012 because of his November 3, 2011, arrest.
35. He was re-paroled in 2013 and remained on parole until its expiration.
36. He was recently arraigned in Rochester City Court on Criminal Possession of a Controlled Substance 3rd: Narcotic Drug Intent To Sell (felony), Criminal Possession Controlled Substance/Narcotic (felony), Criminal Possession Weapon-2: Loaded Firearm-Other Than Person's Home/Business (felony), and Criminal Possession Weapon-3rd: Previous Conviction (felony), which appears to be related to the instant offense.
37. On March 11, 2020, Defendant was recorded on a jail call stating that he had been arrested with a gun and "some work," which the case agent would testify was slang for drugs to sell.
38. However, the defense proffered that "work" is slang for cocaine and that a DEA Intelligence Report, "Slang Terms and Code Words: A Reference for Law Enforcement Personnel," DEA-HOU-DIR-022-18 (July 2018), lists "regular work" and "work" as slang for cocaine (at 3 & 121).
39. Defendant proffered that he has always made his court appearances.

40. Defendant proffered that he was released on these charges by a Rochester City Court judge on March 11, 2020, and was not aware of an outstanding federal arrest warrant for the current offenses.
41. Defendant was arrested at the Greater Rochester International Airport before he boarded a flight for Atlanta, Georgia.
42. Defendant has children in Atlanta and was taking the flight to visit them.
43. Defendant's sister has equity in her home she is willing to pledge, up to possibly as much as $15,000, and she is current on her primary mortgage.

## LEGAL STANDARD

The government is moving for detention on both risk of flight and dangerousness grounds. For risk of flight, the government bears the burden of showing by a preponderance that no condition or combination of conditions will reasonably assure the defendant's presence in court. For dangerousness, the government bears a higher burden of clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### *Presumption*

The government is relying on the presumption pursuant to 18 U.S.C. § 3142(e) which states:

> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—
>
> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

The presumption alone is enough to show that detention is warranted, unless the defendant produces some evidence relating to the "G" factors in 18 U.S.C. § 3161(g). In that case, the presumption drops out, but is still a factor to consider along with the G factors.

A defendant bears the burden of coming forward with evidence to rebut the presumption, but the burden of persuasion remains on the government. *See United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) (pertaining to the risk of flight); *see also United States v. Rounds*, 619 Fed. App'x 40 (2d Cir. 2015) (summ. order) (applying presumption to both risk of flight and dangerousness).

### *G factors*

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, consider the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

6

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

## CONCLUSIONS OF LAW

With regard to the first (g) factor—the nature and circumstance of the offense charged—Defendant has been charged with a crime in relation to controlled substances, Possession with Intent to Distribute Cocaine, as well as possessing a firearm in Furtherance of a Drug Trafficking Offense. These are serious charges and weigh in favor of detention. Defendant has proffered some evidence rebutting the presumption of dangerousness and risk of flight flowing from the presumption in 18 U.S.C. § 3142(e)(3)(A) and (B).

With regard to the second (g) factor—the weight of the evidence against the person—Defendant was found with cocaine and carrying a firearm, and stated that

he was caught with a gun and "some work." The weight of the evidence against the defendant is strong for possession of cocaine and weighs in favor of detention. The defense has shown that any implication that Defendant was involved in an attempted home invasion is weak. The individual described by the victim to the police officer was wearing shorts, and when stopped by police, Defendant was not wearing shorts. With regard to possession of a weapon in furtherance of drug trafficking, the evidence proffered is inconclusive. Further, Defendant has raised constitutional questions concerning the search. This (g) factor weighs in favor of release.

With regard to the third (g) factor, Defendant was born in and is a lifelong resident of Rochester. His children and ex-wife live in Atlanta Georgia. Defendant has lived with his girlfriend of one year. He has never traveled outside the United States and does not have a Passport. These facts suggest Defendant is not a flight risk, as he has close ties to the Rochester area. While Defendant was arrested at Rochester International Airport attempting to fly to Georgia, it appears he was trying to visit his children. He has had a record of appearing for his court dates, never failing to appear in court, further illustrating his non-risk. In aggregate, Defendant does not pose a risk of flight.

Defendant has a criminal record consisting of two misdemeanors (assault and trespass) in 2000, and in 2004, was convicted of a felony, Robbery 1st: Displays What Appears to be a Firearm (this robbery conviction took place 16 year ago), and felony

8

criminal possession of marijuana in 2012.[1] He has a driving while intoxicated conviction from January 2020, and, as previously mentioned, is charged with drug possession with intent to sell and possession of a firearm in Rochester City Court (related to the charges pending in this court). This factor weighs in favor of release.

With regard to the final (g) factor, the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release, the facts weigh against detention. Defendant was found with a loaded firearm when he was arrested, which could indicate that he partakes in dangerous behaviors. While Defendant was convicted of robbery, it was in 2004, well over sixteen years ago. He has not been arrested or convicted of a violent crime since. Since his robbery conviction, he now has a child who resides in Georgia, as well as a significant other of one year.

During the detention hearing the Defense showed Defendant's family had eight to nine thousand dollars in equity, five thousand in cash, and a mortgage, which payments are up to date.

Considering all factors, the Court concludes that there are conditions or a combination of conditions that will reasonably assure the appearance of Defendant as required and the safety of the community. The conditions will include the standard ones generally imposed in cases of this type, and the Court asks the U.S. Probation Office to propose standard conditions to impose, which the Court will consider. In

---

[1] The police report on this arrest, Gov't Ex. 1, indicates that Defendant fled from police during a traffic stop and hazarded pedestrians during a high-speed chase through the city.

addition, the Court requires Defendant's sister, Myleka Dixon, to file a bond of $10,000 secured by her home. Further, the Court will require that Defendant reside in a home approved by U.S. Probation as suitable. Finally, the Court requires that Defendant be on home detention with monitoring, and not be permitted to leave his home except for enumerated circumstances, to be spelled out in the release order, or by advance permission from U.S. Probation.

Because U.S. Probation must inspect the home Defendant proposes to stay in, and assess its suitability for home detention, and because the current pandemic has posed significant restrictions on U.S. Probation staff, the Court directs that a home inspection take place and that if found suitable, Defendant be released on conditions by appearing before the undersigned no later than Tuesday, May 5, 2020, for the imposition of conditions of release and filing of the bond. At the request of the government, however, this Order is stayed until the end of the day on May 4, 2020, to permit the government time to file an appeal and seek a stay from the district judge assigned to hear the appeal.

SO ORDERED.

DATED:   May 1, 2020
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge